UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

SAMUEL L. MCARTHUR,

        Plaintiff,

  - v -

                                              5:01-CV-0011

CARRIER CORPORATION and KENNETH
FILOW,

        Defendants
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**APPEARANCES:**                         **OF COUNSEL:**

SAMUEL L. MCARTHUR
*Plaintiff Pro Se*

BOND SCHOENECK & KING, P.L.L.C.     Subhash Viswanathan, Esq.
*Counsel for Defendant*
One Lincoln Center
Syracuse, New York 13202

**NORMAN A. MORDUE, District Judge**

## MEMORANDUM-DECISION AND ORDER

**I.**     **INTRODUCTION**

    Plaintiff, Samuel McArthur, was employed by defendant Carrier Corporation from 1980 until March 1999 when, according to Carrier, plaintiff was terminated pursuant to the terms of his collective bargaining agreement for failure to submit medical or other documentation in support of extending a two-year medical leave of absence. Plaintiff contends that Carrier terminated him based on: 1) a disability in violation of the Americans with Disabilities Act ("ADA"), codified at 42 U.S.C. Section 12101 *et seq.*; and 2) his race in violation of Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. § 2000e *et seq.*. Defendants

move for summary judgment dismissing plaintiff's claims on various grounds. Plaintiff, who is *pro se,* has not opposed defendants' motion although per this Court's order, he was clearly advised of the consequences of failing to do so.

## II.      FACTUAL BACKGROUND

The facts, undisputed by plaintiff, are as follows:

Plaintiff began his employment with Carrier on or about February 18, 1980, as a Janitor Sweeper. Plaintiff bid on, and was awarded, various positions at Carrier during his employment pursuant to the post and bid procedure set forth in the collective bargaining agreement between the union to which he belonged and Carrier. On or about May 7, 1990, plaintiff was awarded a Miscellaneous Machine Operator position at Carrier's TR-3 manufacturing facility, and held that position until Friday, January 10, 1997, the last day he worked at Carrier. Plaintiff began a medical leave of absence on Monday, January 13, 1997, due to a respiratory condition that allegedly prevented him from working in the TR-3 manufacturing environment.

On June 30, 1997, plaintiff was released to return to work in a clean work environment with minimal pollutants in the atmosphere. Plaintiff's work restriction precluded him from performing the duties of his Miscellaneous Machine Operator position or any other position within the TR-3 manufacturing environment, either with or without reasonable accommodation. Carrier attempted to find work for plaintiff within his restrictions, but was unable to do so. Accordingly, plaintiff was informed that no work was available within his restrictions.

After June 30, 1997, plaintiff failed to provide any further information to Carrier's medical department regarding his ability to return to work. Furthermore, plaintiff did not at any time apply for or identify any vacant positions outside the TR-3 facility that he was qualified for

and able to perform, given the restrictions imposed upon him by his physicians.

In May 1998, plaintiff was involved in a motor vehicle accident, which precluded him from working in any position in any work environment for a period of several months. Plaintiff was involved in another motor vehicle accident in January 1999, which further rendered him unable to return to work in any position in any work environment. On June 2, 1998, plaintiff was examined by Dr. Michael Lax and was deemed unable to return to work for a period of at least five months. Dr. Lax examined plaintiff again on November 3, 1998, and deemed him unable to return to work for a period of at least three months. Dr. Lax examined plaintiff for a third time on January 5, 1999, and again deemed him unable to return to work for a period of at least three more months.

As of January 13, 1999, plaintiff had been on a medical leave of absence for two years. Article XXIII, Section 1. Paragraph A of the collective bargaining agreement, which governs medical leaves of absence, provides:

> In case of verified illness or injury (occupational or non-occupational) making it necessary for an employee to be temporarily absent from work, a leave of absence will be granted to an employee, who has completed their probationary period, for a period of twenty-four (24) months or the employee's seniority, whichever is less.
>
> All employees with over two(2) years seniority, who are on a compensable leave of absence for twenty-four (24) months, may have their leave extended for up to an additional twelve (12) months, where there is a reasonable expectation that the employee will be able to return to work within this additional twelve (12) month period.

Pursuant to this contractual provision, Carrier sent a letter to plaintiff on February 11, 1999, informing him of his right to request an extension of his leave period until January 13, 2000.

Specifically, Carrier informed plaintiff that his 24-month medical leave of absence expired on January 13, 1999, and requested written documentation from plaintiff's physician indicating a reasonable expectation that he would be able to return to work by January 13, 2000. In the letter, Carrier explicitly stated: "Failure to supply the Company with the information requested will result in your non-disciplinary termination." Carrier waited more than one month for a response to its letter, but plaintiff did not respond. Accordingly, because plaintiff had failed to provide the documentation necessary to extend his leave of absence, Carrier sent a letter to plaintiff on March 22, 1999, informing him that his employment was terminated.

On November 29, 1999, plaintiff filed an administrative charge with the New York State Division of Human Rights ("DHR"), and cross-filed the charge with the Equal Employment Opportunity Commission ("EEOC"). In his administrative charge, plaintiff alleged only disability discrimination; he did not make any allegations of race discrimination, DHR conducted a thorough investigation of plaintiff's disability discrimination claim, and found that there was "no probable cause" to believe Carrier engaged in any unlawful discriminatory practice with respect to plaintiff. EEOC adopted the findings of DHR in their entirety, and issued a Dismissal and Notice of Rights on or about October 10, 2000. The present action followed.

**III.     DISCUSSION**

A.     Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

4

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986). Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute. *See id.* The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided. *See Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case. *See id.* at 325. Once the movant meets this initial burden, the nonmoving party must demonstrate that there is a genuine unresolved issue for trial. *See* Fed. R. Civ. P. 56(e). It is with these considerations in mind that the Court addresses defendants' motion for summary judgment.

B.   Plaintiff's Failure To Oppose Defendants' Motion

The Court first addresses the legal significance of plaintiff's failure to oppose defendants' motion, and specifically whether that failure automatically entitles defendants to dismissal based upon their motion. This Court's rules provide that:

> [w]here a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown.

N.D.N.Y.L.R.7.1(b)(3). While recognizing that *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions (*see Jemzura v. Public Service Comm'n*, 961 F.Supp. 406, 415 (N.D.N.Y.1997) (McAvoy, C.J.)), courts in this district have found it

appropriate to grant a dispositive motion pursuant to Local Rule 7.1(b)(3) based upon a *pro se* plaintiff's failure to respond. *Robinson v. Delgado,* 96- CV-169, 1998 WL 278264, at *2 (N.D.N.Y. May 22, 1998); *Cotto v. Senkowski*, 95-CV-1733, 1997 WL 665551, at *1 (N.D.N.Y. Oct. 23, 1997); *Wilmer v. Torian,* 980 F.Supp. 106, 106- 07 (N.D.N.Y. 1997). According to Local Rule 7.1(b)(3), however, before summary judgment can be granted--even in the absence of opposition--the court must review the motion to determine whether it is facially meritorious. *See Allen v. Comprehensive Analytical Group, Inc.,* 140 F.Supp.2d 229, 231-32 (N.D.N.Y. 2000); *Leach v. Dufrain,* 103 F.Supp.2d 542, 545-46 (N.D.N.Y. 2000).

While a plaintiff's failure to properly oppose a defendant's motion does not assure that the motion, however lacking in merit, will be granted, that failure is not without consequences. By opting not to submit proper papers in opposition to their motion, plaintiff has left the facts set forth in defendants' Local Rule 7.1(a)(3) Statement unchallenged. Courts in this district have not hesitated to enforce Local Rule 7.1(a)(3)[1] and its predecessor, Local Rule 7.1(f), by deeming facts set forth in a statement of material facts not in dispute to have been admitted based upon an opposing party's failure to properly respond to that statement. *See, e.g., Elgamil v. Syracuse Univ.*, No. 99-CV-611, 2000 WL 1264122, at *1 (Aug. 22, 2000) (listing cases); *see also Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 292 (2d Cir. 2000) (discussing district courts' discretion to adopt local rules like 7.1(a)(3)). Based thereupon, the Court accepts defendants' assertion of facts as set forth above and in their Local Rule 7.1(a)(3) Statement as

---

[1] According to Local Rule 7.1(a)(3), "[a]ny facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." See N.D.N.Y.L .R. 7.1(a)(3) (emphasis omitted).

uncontroverted, in light of plaintiff's failure to respond to that Statement.

C.      Individual Liability Under Title VII and the ADA

Title VII by its terms only prevents racial discrimination by "employers." Thus, individual defendants cannot be liable in either their personal or official capacities for any acts of alleged unlawful discrimination under Title VII. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995). It is also true that there is no individual liability for alleged disability discrimination under the ADA. *See Medlin v. Rome Strip Steel Co., Inc.,* 294 F.Supp.2d 279, 287, n. 6 (N.D.N.Y. 2003). Based thereupon, plaintiff's Title VII and ADA claims against individually named defendant Filow must be dismissed.

D.      Exhaustion of Administrative Remedies

Carrier argues that plaintiff failed to exhaust his administrative remedies in connection with his Title VII claims because his dually filed DHR charge of discrimination did not assert any claim of race discrimination under Title VII. In both Title VII and ADA cases the Court has jurisdiction over only those claims included in the EEOC charge and those "reasonably related" to claims presented in the charge. *Skeete v. IVF America, Inc.,* 972 F.Supp. 206, 210 (S.D.N.Y. 1997); *see, e.g., Legnani v. Alitalia Linee Aeree Italiane, S.P.A.,* 274 F.3d 683, 686 (2d Cir. 2001). The Second Circuit has recognized three situations in which claims not raised in an administrative charge are "sufficiently related to the allegations in the charge that it would be unfair to civil rights plaintiffs to bar such claims in a civil action." *Terry v. Ashcroft,* 336 F.3d 128, 152 (2d Cir. 2003). These are: 1) where "the conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination;' " 2) where the complaint is "one alleging retaliation by an employer against

an employee for filing an EEOC charge;" and 3) where the complaint "alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Id.* (citing *Butts v. City of New York Dep't of Hous. Pres. & Dev.,* 990 F.2d 1397, 1402-03 (2d Cir. 1993) (superceded on other grounds); *see also Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002) (plaintiff's EEOC charge did not contain termination claim and termination claim was not "reasonably related" to any charges in administrative charge)). Since there is nothing in plaintiff's administrative charge concerning his race or a suggestion that his race played any part in the alleged discriminatory action taken against him by Carrier, the Court cannot say that the Title VII allegations of race discrimination in his complaint are "reasonably related" to any claim in the administrative charge. Based thereupon, plaintiff's Title VII claims for race discrimination must be dismissed.

E.       Plaintiff's Claims against Carrier under the ADA

In the first instance, Carrier argues that many of plaintiff's claims under the ADA must be dismissed because he failed to raise them in his administrative charge of discrimination prior to filing suit. Although plaintiff has made no arguments in opposition to defendants' motion, the Court suspects that any lawyer representing plaintiff in this case would contend that all of plaintiff's ADA claims, even those which occurred prior to the 300-day administrative filing period prescribed by the ADA, are "reasonably related" to his claims of disability discrimination under at least one of the three tests articulated in *Butts, supra.* However, the Court need not address whether the allegations of disability discrimination which appear in his complaint, but not in his DHR charge, survive under *Butts* since his ADA claims are subject to dismissal on other grounds.

The ADA prohibits discrimination by covered entities against "qualified" individuals with a disability. Specifically, it provides that no "covered" employer shall "discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is identified as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). In turn, a "disability" is defined as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Accordingly, to fall within this definition one must have an actual disability, a record of a disability, or be regarded as having one.

Subsequent to passage of the ADA, EEOC issued regulations to provide additional guidance regarding the proper interpretation of the term "disability." The regulations define the three elements of disability: (1) "physical or mental impairment," (2) "substantially limits," and (3) "major life activities." 29 C.F.R. §§ 1630.2(h)-(j) (1998). Under the regulations, a "physical impairment" includes "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine." *Id.* at § 1630.2(h)(1). The term "substantially limits" means, among other things,

"[u]nable to perform a major life activity that the average person in the general population can perform;" or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Id.* at § 1630.2(j).  Finally, "[m]ajor [l]ife [a]ctivities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.* at § 1630.2(i).

To state a *prima facie* case of discrimination under the ADA, a plaintiff must demonstrate that: 1) he suffers from a disability within the meaning of the ADA; 2) that he was otherwise qualified to perform his job or a job he was applying for; and 3) that he was not hired for the job or discharged because of his disability.  *Wernick v. Fed. Reserve Bank of New York,* 91 F.3d 379, 383 (2d Cir. 1996).  Plaintiff's ADA claim is fatally flawed because it assumes that persons who have medical conditions are disabled within the meaning of the ADA.  However, the existence of a medical condition or even the necessity of work restrictions because of it does not necessarily render an individual disabled or entitled to raise an ADA claim in the face of an employer's decision to terminate employment.

In *Daley v. Koch*, 892 F.2d 212, 215 (2d Cir. 1989), the Second Circuit stated the obvious fact that a person found unsuitable for a particular position has not thereby demonstrated an impairment substantially limiting such person's major life activity of working.  *See also, Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 720 (2d Cir. 1994) (inability of plaintiff with asthmatic condition to satisfy the requirements of a particular assignment "does not mean such a person is regarded as handicapped.  Such inability does not constitute

the necessary substantial limitation of a "major life activity" required to meet the definition of a handicapped person under the Act. To meet that definition, the employee's impairment must limit her employment generally.")

Here plaintiff was medically restricted from working in only one type of environment. Plaintiff's doctor released him to work in a "clean environment with minimal pollutants in the air." There is no evidence in this case suggesting plaintiff's alleged respiratory problems precluded him from working altogether. Moreover, plaintiff has not produced evidence demonstrating even that his ability to breathe was substantially limited by his alleged respiratory illness. Because his respiratory condition did not substantially limit a major life activity--either his ability to breathe or work--plaintiff cannot establish a *prima facie* ADA claim.

### IV. CONCLUSION

Based upon the foregoing, defendants' motion for summary judgment dismissing plaintiff's complaint is hereby GRANTED.

IT IS SO ORDERED.

Dated: September 30, 2005
Syracuse, New York

Norman A. Mordue
U.S. District Judge